[Civ. No. 13286.   Second Dist., Div. Two.   Oct. 2, 1941.]

JULIAN SARGENT, Appellant, v. C. L. COPPAGE, Respondent.

J. Howard Ziemann for Appellant.

Binford & Binford, L. B. Binford and Howard M. Binford for Respondent.

SCOTT (R. H.), J. *pro tem.*—From judgment for defendant in a suit involving money paid for a share in a gold mine plaintiff appeals.

In March, 1937, plaintiff entered into an agreement with defendant Coppage, William A. Martin, Jr., and Elbert Whitney by which plaintiff paid in $4000 and was to receive a four per cent interest in the mine. The agreement provided as follows:

"That for and in consideration of the sum of one ($1.00) dollar, receipt of which is hereby acknowledged and the covenants and agreements hereinafter set forth, the first parties hereby sell, assign, set over and transfer to said second party, all their right, title and interest in and to an undivided four (4%) per cent. interest in the following described mining claims. . . .

"It being understood between the parties hereto that one of the said parties shall manage the said claims without the interference of any of the other parties hereto, said parties hereby agree that C. L. Coppage shall at all times have

the right to manage the operation of said mining claims.

"The second party hereby agrees that the first parties shall have the right at any time during the life of this agreement to form a corporation, the said corporation to be incorporated for the sum of One Hundred Thousand ($100,000) dollars and the said second party hereby agrees to assign the second party's said four (4%) per cent. interest to said corporation and in return receive and accept stock of said corporation equivalent thereto, or in the amount of four (4%) per cent. of the total stock of the corporation.

"Said second party hereby further agrees that said stock so received shall be non-voting, in order that said C. L. Coppage shall have voting control."

In July, 1937, plaintiff, defendant Coppage and the two other owners met, organized and signed the articles of incorporation for the Victory Mining Company. Pursuant to an application therefor made by the directors, including plaintiff, a permit was granted to the corporation to issue stock. Plaintiff and the others transferred their interests in the mine to the corporation and received in escrow shares of its stock. In May, 1938, plaintiff gave notice of re-scission of the contract of March, 1937, to Coppage and the other two parties and filed this suit against them shortly thereafter, seeking to recover the $4000 which he had paid in. During the trial plaintiff dismissed as to two of the defendants and judgment was granted in favor of the remaining defendant, Coppage.

■ It is plaintiff's contention on appeal that the agreement of March, 1937, constituted the sale of a "security" and required a permit from the corporation commissioner, and that for lack of such permit the transaction was illegal and void and he is entitled to the return of his money.

The Corporate Securities Act of the State of California in effect in 1937 and at the time of the transactions complained of required a permit to issue any security, and provided that a security issued without such permit was void. (Deering's Gen. Laws, Act 3814; *Mary Pickford Co.* v. *Bayly Bros. Inc.,* 12 Cal. (2d) 501 [86 Pac. (2d) 102]; *Pollak* v. *Staunton,* 210 Cal. 656 [293 Pac. 26].) "The law was passed to protect the investors against unprincipled promoters, as well as to keep valueless securities off the market." (*People* v. *Oliver,* 102 Cal. App. 29 [282 Pac. 813].) In

this case, after construing the agreement in the light of all the circumstances, including subsequent events, as it had the right to do (*Lemm v. Stillwater L. & C. Co.,* 217 Cal. 474 [19 Pac. (2d) 785]), the trial court properly found that the agreement of March, 1937, "was a temporary expedient only and was recognized by the parties as being made for the sole and only purpose of providing a record of the interests of the parties thereto pending the formation of the corporation."

Plaintiff suggests that the transaction cannot be considered a subscription to shares prior to incorporation because such incorporation was not within ninety days of such agreement. Section 33 of the act permitted subscriptions for shares of a corporation prior to incorporation but provided that "such subscription shall be deemed to have been made and accepted upon the condition that such corporation shall be incorporated within ninety days thereafter, and, when incorporated, shall with reasonable diligence apply for and secure from the commission a permit authorizing the issue of the shares so subscribed for. . . . " The agreement was dated March 9, 1937. Plaintiff gave his check to defendant on March 16, 1937. The corporation was formed July 13, 1937, with plaintiff present as one of the incorporators. The application for a permit was filed July 28, 1937, with plaintiff present at the meeting where the resolution was passed authorizing it. No authority has been brought to our attention which would support the view that under the facts of this case the delay of less than a month over the ninety days statutory period between the giving of plaintiff's check and the formation of the corporation would be such a violation of the act as to make the original agreement of the parties void from the beginning. We do not state nor do we mean to imply that a delay beyond the 90 days in incorporating a company would not be in violation of a subscription agreement, entitling an aggrieved party to relief under proper circumstances.

It should be observed that although the period of ninety days is fixed as the proper time within which the corporation should be formed, reasonable diligence is all that is required thereafter in applying for the permit to issue stock, and such diligence was used in this case. No complaint is

made concerning the findings of the trial court that there were no misrepresentations of fact nor actual fraud by defendants, and it appears that the money was expended to develop, equip and operate the mine as contemplated by the parties.

The question, then, is whether the plaintiff, having shared in the incorporation of the Victory Mining Company and the securing of the permit to issue stock, having received shares representing his proportionate interest and having watched the expenditure of the money over a period of ten months for the intended purpose of equipping and developing the mine, may then rescind the original contract and recover his money paid under it because the corporation was not formed by the parties within the precise ninety-day period fixed by the act. Nothing in the language of the act nor in the decisions interpreting it justifies a construction which would enable the plaintiff to thus extricate himself from an unsatisfactory investment.

Judgment affirmed.

Moore, P. J., and Wood, J., concurred.

Appellant's petition for a hearing by the Supreme Court was denied November 27, 1941.