[Civ. No. 14967.   First Dist., Div. One.   Apr. 17, 1952.]

JOSEPH POLIZZI, Appellant, v. THOMAS PORCARO, Respondent.

Elios P. Anderlini and Herbert Chamberlin for Appellant.

Walter F. Calcagno for Respondent.

BRAY, J.—Plaintiff sought return of certain moneys paid for an interest in a cannery. From a judgment in favor of defendant, plaintiff appeals, on the main ground of insufficiency of evidence. The correctness of the findings is also attacked.

### EVIDENCE

Taking, as we are required to do, the evidence, and the reasonable inferences therefrom, most strongly in favor of defendant, there is substantial evidence to support the verdict. Defendant's son Vincent owned certain buildings and equipment in Fresno. They were subject to a $10,000 encumbrance. Defendant had a power of attorney from Vincent. Although the organization in November of 1945 was on record with the Corporation Commissioner as California Best Products Company, *Inc.*, the name California Best Products Company was being used. At the time of the agreement, no stock was as yet issued. It was not until after the agreement was signed that "Inc." was actually used in the name. The parties had known each other for many years. Plaintiff had an interest in and managed a San Francisco restaurant. Defendant was in the food brokerage business. Defendant and his son wanted to operate a cannery. None was operated prior to the agreement hereafter mentioned. After some preliminary discussions, plaintiff agreed to invest $12,500 for a one-quarter interest. On March 18, 1947, a rather crude agreement was drawn up and signed by plaintiff and defendant.

"THOMAS PORCARO
7 Front Street
San Francisco 11, California
PERSONAL

San Francisco, Calif.
March 18, 1947

"Agreement between Thomas Porcaro, 7 Front Street, San Francisco, California and J. Polizzi, 225 California Street, San Francisco, California. J. Polizzi agrees to pay the amount of 12,500 to Thomas Porcaro as ¼ interest in the new Tomato

Cannery to be erected in Fresno, California, at 4150 California Avenue.

"The name of the corporation will be California Best Products Co., Inc., or any other name approved by the members of the corporation. Mr. J. Polizzi, one of the organizers of the corporation for ¼ of the total capital designated to cover the cost of machinery, labor and expenses required to have the cannery in working status.

"Thomas Porcaro promises to supervise all the necessary work and to supply and to deliver the certificate of the stock covering the $12,500 to Mr. Polizzi as soon as the corporation papers are ready.

"*Within one year from today, Mr. Polizzi has the choice of returning the stock to Thomas Porcaro for a refund of his capital plus 5% interest on 60 days notice.*

"This stock or interest in the corporation cannot be transferred to anybody without the consent of the other three members of the corporation. Also Mr. J. Polizzi agrees to give first choice to buy his interest to Thomas Porcaro or his son Vincent T. Porcaro in case he decides to sell. *Also in case he does not desire to accept the stock of the corporation, at the end of the first year he is entitled to the refund of his money plus 5% interest.*

Signed,

(s) T. Porcaro
Thomas Porcaro

(s) JOSEPH POLIZZI
G. Polizzi"

Plaintiff then paid defendant $12,500. The court found and the evidence shows that defendant used this money in the business, reporting to plaintiff his activities, what he spent the money for, and the progress of the enterprise.

It is undisputed that plaintiff never received nor was offered the stock. Plaintiff testified that defendant never at any time after the execution of the agreement talked to him about the stock. On the other hand, defendant testified that when he told plaintiff the stock was in escrow plaintiff asked him to leave his name out of the corporation and that he did not want the stock then because he was having financial trouble in the restaurant business with "the Frenchman" and also was trying to have his civil rights restored by a pardon after

---

*Unless otherwise noted, italics are ours.

a felony conviction, and did not want the stock until he had finished with both matters. The liquor license at plaintiff's restaurant was in the name of the bartender, apparently because of plaintiff's conviction and loss of civil rights. Plaintiff testified that in August or September of 1947 he went to Fresno to look at the cannery, taking his brother-in-law, whom he desired to interest in investing money in the business. The brother-in-law did not think much of the deal and would not go in on it. Thereupon plaintiff claimed that he asked for the return of his money and that defendant told him he would return it in 60 days. Plaintiff claimed that from time to time until he filed suit he demanded his money. Each time defendant would promise to repay it as soon as he could sell the property, a deal for which was pending. Plaintiff's claim of demand was supported by the evidence of plaintiff's wife, who had put up part of the $12,500, his brother-in-law, and an employee of plaintiff. However, defendant denied that plaintiff at any time asked for his money. The court found that no demand was made until the filing of the suit. He testified as to the purchase and installation of equipment, and his services in applying to the R.F.C. for financial assistance and his other actions in trying to get the cannery started.

In July or August plaintiff and defendant were trying to interest Gusmano, a broker, in selling their tomato sauce in the East. In a meeting between the three defendant did all the talking, plaintiff not saying anything. In March, 1948, plaintiff and defendant came to the office of one Pieri with the sauce which had been made in the cannery for sample purposes. These acts of plaintiff support defendant's testimony that until the time of suit, plaintiff was satisfied with the transaction and did not ask for his money.

In October, 1948, the Corporation Commissioner issued his permit authorizing the issuance of fifty shares of the California Best Products Company to Vincent for the consideration of certain pieces of equipment. Defendant testified that the reason such a small amount of stock was issued was to qualify for a loan from R.F.C. The rest of the corporation formation and stock issuance was held in abeyance because of plaintiff's desire not to have his name used at that time.

In October, 1948, a check for $2,000 payable to plaintiff's wife and signed California Best Products Company, Inc., Thomas Porcaro, was given by defendant to plaintiff's wife. Plaintiff claims that this was given as a partial return of his money. Defendant testified that Mrs. Polizzi came to him in

the spring of 1948 and told him she needed money for personal reasons. He refused to give her any. He spoke to plaintiff about it and plaintiff said that he was selling the restaurant and would pay her "because she should stay out of all my business." In September plaintiff asked defendant to give Mrs. Polizzi some money and he would pay defendant back as soon as he sold the restaurant. It was on this express promise to repay that defendant drew the check to Mrs. Polizzi and gave it to plaintiff.

■ Great stress is placed by plaintiff upon the effect of the failure of defendant in his answer to deny the allegation in the first cause of action of the complaint which read: "That no part of said sum of $12,500 has been paid, *except only the sum of $2000.00.*" Plaintiff contends that this removes the question of what the $2000 was paid for as an issue in the case, citing *Fuentes* v. *Tucker*, 31 Cal.2d 1 [187 P.2d 752], and *Welch* v. *Alcott*, 185 Cal. 731 [198 P. 626]. However, the rule of those cases does not apply here for the reason that, in spite of the technical effect of the pleadings, assuming that on the face of the pleadings the payment is admitted (although there is considerable doubt as to the effect of the failure to deny that allegation; in the other two causes of action it is denied), the parties made it an issue. At no time during the introduction by defendant of evidence of the circumstances of the payment of the $2,000 was any objection made to its introduction, nor was the court's attention called by plaintiff to the admission in the pleadings. Where a case is tried as though no admission had been made, and the issue of the purpose for which the money was paid was submitted without objection to the court for determination, the rule of the above cases does not apply.

In view of the conflict of evidence as to whether the $2,000 was a return of money to plaintiff or a loan, we are bound by the court's finding that it was a loan. The same thing is true of the court's finding that plaintiff at no time prior to suit demanded a return of his money.

## JOINT VENTURE

■ The court, after finding that the parties entered into the agreement of March 18, 1947, found "that plaintiff's contribution to the *joint venture* was the sum of $12,500." Plaintiff contends that this was not an agreement for a joint venture but a corporation stock subscription agreement. Such interpretation is incorrect. It obviously was an agreement for

a joint venture in which the adventurers would form a corporation. Plaintiff was to have "¼ interest in the new Tomato Cannery . . ." "The name of the corporation will be California Best Products Co., Inc., *or any other name approved by the members of the corporation.*" Plaintiff was "one of the organizers of the corporation . . ." Moreover, plaintiff had the option either during the first year or at its end to refuse the stock and thereby terminate the joint venture. Plaintiff treated the arrangement as a joint venture by at all times requiring that his name not be included in the corporation. This situation answers the contention that the agreement was illegal because in violation of the Corporate Securities Act ·(2 Deering's Gen. Laws, Act 3814; Corp. Code, §§ 25000-26104.)

### TIME FOR DEMAND

In effect, the court found that the agreement gave plaintiff two options to demand a return of his money. 1. (Paragraph 6, Findings.) Plaintiff within the year had an option to demand the return of his money. (As pointed out before the court's finding that he did not do this is supported.) While the agreement actually stated that within the year plaintiff had the choice of returning the stock for a refund of his capital plus interest, this part of the agreement would entitle him to a return of his money within that period whether or not the stock had been issued. Plaintiff finds fault with this finding by contending it is a distortion of the contract and means that as no stock was issued plaintiff could not have demanded his money back during the year. Such contention is really a distortion of the finding. Moreover, as plaintiff made no demand during the year, the discussion is academic. 2. (Paragraph 8, Findings.)  Plaintiff had a reasonable time after the expiration of the year to demand the return of his money, but did not do so. Plaintiff's main contention here is that the language of the agreement, "Also in case he does not desire to accept the stock of the corporation, *at the end of the first year* he is entitled to the refund of his money plus" interest, gave him almost a year after March 18, 1948 (the agreement was made March 18, 1947), in which to demand his money. The suit, which the court found was the first demand, was filed January 12, 1949, almost 10 months after the expiration of the first year. Obviously that was more than a reasonable time, particularly in view of evidence that as late as July or August, 1948, plaintiff

seemed satisfied with the deal and met with the broker Gusmano concerning sales of the sauce to be produced by the cannery. Plaintiff also contends that a reasonable time after the end of the first year would include the entire time during which plaintiff's claim would not be barred by the statute of limitations. In *Fergus* v. *Venice Investment Co.*, 36 Cal.App. 425 [172 P. 396], the question was what was a reasonable time in which to make demand for the recovery of money paid for stock not delivered, in order to start the statute of limitations running. The court pointed out that the defendant kept promising the stock and the parties were friends and held that the delayed demand was made in a reasonable time. The court in that case refers to cases which have decided that by adoption of an analogy, the period which is fixed by the statute of limitations is a reasonable time. However, the court went on to say this: "However, this rule . . . could not in justice be absolute, as the principal rule announced by the decisions is that the demand must be made within a reasonable time, and appeal is made to the analogy furnished by the statute of limitations only as an aid to the determination of that principal question. . . . what is a reasonable time for making demand must depend upon the facts of each case, whenever those facts are such as to indicate that the analogy of the statute of limitations does not in justice apply." (P. 427.)

In the case of *Hougland* v. *Roth Blum Packing Co.*, 99 Cal. App. 631 [279 P. 159], the court said: "In other words, this contract being silent as to time of performance, the law writes into it terms which require a reasonable performance, having in view the subject of the contract and the place and condition of the objects concerning which the contract was made." (P. 635.)

The question of what is a reasonable time is a question of fact. "But whenever the special facts and circumstances are such that the Court cannot by the aid of any legal rule or principle decide upon the legal quality of the facts, it is necessary that the jury should draw the inference in fact, with reference to the ordinary course and practice of dealing, and the general principles of morality and utility." (*Luckhart* v. *Ogden*, 30 Cal. 547, 558-559.)

Under the circumstances of this case we cannot say that the trial court erred in finding that plaintiff did not act within a reasonable time of the end of the year.

### Omnibus Findings

■ Among other findings the court found (a) "That none of the allegations contained in paragraphs 2, 3 and 4 of the Third Cause of Action . . . are true." The first cause of action was on a common count for money had and received. The third is based on allegations of fraud and misrepresentation. The defendant did not deny the allegations of paragraph 2 of the third cause of action. Hence the court erred in finding its allegations untrue. This paragraph reads: "That pursuant to the representations and stipulations recited in said purported agreement, plaintiff turned over to defendant the sum of $12,500.00." "[P]urported agreement" refers to the March 18, 1947, agreement. Obviously this allegation is true and the court should have so found. (It actually did in other parts of the findings.) ■ Under authority of section 956a of the Code of Civil Procedure finding 12 is hereby amended by striking therefrom the figure "2". The evidence fails to disclose any fraud or misrepresentation nor any cause of action on the common count. The omnibus finding as amended by us, as well as the specific findings, are supported by the evidence.

The judgment is affirmed.

Peters, P. J., and Wood (Fred B.), J., concurred.