[Civ. No. 10103. Third Dist. Jan. 31, 1962.]

JOHN P. BOSWELL, Plaintiff and Respondent, v. BILL
REID, Defendant and Appellant.

Richard A. Case for Defendant and Appellant.

John M. Welsh for Plaintiff and Respondent.

SPARKS, J. pro tem.*—Defendant Reid appeals from a judgment entered against him in an action on an unsecured promissory note and from the order denying his motion for new trial. The note was dated October 21, 1954, and made payable on or before December 21 of the same year, to Fair Oaks Investment and Mortgage Company in the face amount of $18,705.45. Contention is made that the findings of fact and conclusions of law are not supported by the evidence and that the judgment is against the law. It is also asserted that the trial court erred in its rulings on admissibility of the evidence to the prejudice of the substantial rights of the defendant, and that in any event the judgment was excessive.

The litigation arose as an aftermath of an unsuccessful attempt to develop a housing project in the City of Lincoln, California. The proposed construction was of some magnitude, consisting of 38 houses to be located on a tract known as "Western Addition" in the said City of Lincoln. Perhaps the complex factual background best can be described by enumerating the persons involved in the project. First, there was the defendant, Willard W. Reid, who was the owner of the land, or at least stood in that capacity for the purpose of the transaction, being named as grantee in a deed describing the 38 lots. Thomas Kane was a real estate broker who was acting as Reid's agent in the project. Both Reid and Kane were desirous of moving the development forward, but to do so required financial backing. Through Kane's efforts, Reid was put in touch with Fair Oaks Investment and Mortgage

---

*Assigned by Chairman of Judicial Council.

Company, a copartnership consisting of John T. Marko and Charles Hicks, herein called "Fair Oaks." In order to obtain financial commitments for the project, Fair Oaks acted as a sort of entrepreneur between the owner of the land, Reid, and lending agencies. It appeared that the keystone for such financial support depended upon obtaining advance commitments from Federal National Mortgage Association, herein called "FNMA." The possession of such commitments would assure the ultimate purchase by FNMA of qualified "Take-out loans" and would clear the way for the preliminary financing of construction and for interim loans by other lending agencies. Home Investment Company of Long Beach, herein called "Home Investment," had entered into an "advance contract to purchase" with FNMA, by the terms of which FNMA committed itself and agreed to purchase mortgages of the type described, not to exceed the sum of $1,404,636.15.

To obtain the required number of FNMA commitments for the Reid project, Fair Oaks negotiated with John P. Boswell, plaintiff and respondent herein. Boswell was the beneficial owner under Home Investment of a $380,000 portion of the said FNMA advance purchase contract, and contact was made with him by Fair Oaks to purchase 38 FNMA rights of $9,450 each for the Reid project in Lincoln. For a consideration of $17,500, and with the consent of Home Investment, Boswell agreed to assign to Fair Oaks, or its nominee, the said rights. Accordingly, on October 21, 1954, an escrow was set up in the Capital City Title Company of Sacramento, herein called "Title Company," and certain documents were deposited therein with written instructions as to the terms and conditions of delivery. Defendant Reid deposited a check in the sum of $5,700, payable to the Title Company, and the promissory note, the subject of this action, payable to Fair Oaks Investment Company. Fair Oaks deposited in escrow a copy of an agreement with John P. Boswell, relative to the purchase of the $380,000 portion of FNMA rights, and its promissory note in the principal amount of $17,500, payable to John P. Boswell. By letter dated November 3, 1954, Boswell deposited with said Title Company an assignment of his $380,000 portion of the FNMA rights to Fair Oaks, or its nominee, with consent to the assignment and transfer executed by Home Investment, together with a copy of the advance contract purchase of the FNMA.

Defendant Reid's instructions for transfer of the check and note were ". . . when you have received for my account:

1. Evidence that 38 FNMA rights have been obtained ($9,450.00 each) and are available for Bill Reid project on 38 lots in City of Lincoln. 2. Agreement from Marko to obtain C.R.V.'s—interim financing, take out financing and process all closing (insurance excepted) and to handle all. inspection at his expense. . . . Upon compliance pay out $5,700.00 and deliver note."

Fair Oaks' instructions were:

"Provided that there has been delivered into your escrow No. 108681, the sum of $5,700.00, from Bill Reid, and a promissory note dated October 21, 1954, in the amount of $18,705.45, including interest to maturity, date of December 21, 1954, payable to Fair Oaks Investment & Mortgage Company, executed by Bill Reid, you are authorized to deliver the enclosed $17,500.00 note to John P. Boswell, and request the return to you of acknowledgment of the purchase of the $380,000.00 FNMA rights and that the said FNMA rights shall be picked up, upon the completion of the proposed construction in the tract consisting of thirty-eight (38) dwellings in the City of Lincoln, State of California.

"It is acknowledged that the escrow instructions left with you by Bill Reid provided that Fair Oaks Investment & Mortgage Company is to obtain C.R.V.'s, interim financing, take-out financing, and is to process all closing (fire insurance excepted) and to arrange for all construction progress inspections, which upon receipt by Fair Oaks Investment & Mortgage Company of the said sum of $5,700.00, and the said promissory note in the amount of $18,705.45, it is agreed shall be undertaken by Fair Oaks Investment & Mortgage Company, interim financing points and interim interest to be paid by developer."

Instructions of plaintiff John P. Boswell as to the delivery of $380,000 of FNMA rights to Fair Oaks were:

"This transfer is being made for the express and exclusive allocation of these FNMA rights consisting of 38 lots in blocks 21, 22, 27 and 28 in Western Addition No. Two, City of Lincoln, California. The letter assigning said rights is, of course, being delivered conditionally to your obtaining the required Deed of Trust, securing the Note of Bill Reid in the amount of $18,705.45, and is not to be effective until receipt by you of the required Deed of Trust. It is also subject to all the terms and conditions of this escrow.

"We also require that if any Trust Deed, Mortgage or Lien is recorded upon said 38 lots other than the interim construc-

tion loan Trust Deed, our Trust Deed in the amount of $18,705.45, shall be immediately recorded even though the date is prior to December 21, 1954.

"You are hereby also informed that under the terms of this escrow, no portion of the $18,705.45 Note, when paid into your escrow, is to be released to the Fair Oaks Investment & Mortgage Co., until the amount of our Note $17,500.00 has been paid. In other words, inasmuch as Mr. Reid's Note is the principal security for the payment of our Note from Fair Oaks Investment & Mortgage Co., in the amount of $17,500.00, no portion of the principal sum of $18,705.45, is to be released until the entire Note in the amount of $17,500.00 has been paid to us. It is also understood and agreed that our Note in the amount of $17,500.00, payable by Fair Oaks Investment & Mortgage Co., Charles A. Hicks, individually and John T. Marko, individually is to be paid as soon as funds are received from Mr. Reid in payment of his Note of $18,705.45, and you shall not be required to wait for the due date of our Note, March 26, 1955, before making this payment of $17,500.00 to us."

The special condition inserted by Boswell that a trust deed be furnished securing the Reid note was subsequently waived by Boswell, and the FNMA rights were to be delivered upon receipt of the $17,500 note of Fair Oaks. On November 5, 1954, the manager of the Title Company considered the escrow in a position to be closed and delivered to Fair Oaks the Title Company's check for $5,700. He then deposited for collection Reid's check, payable to the Title Company, in the same amount. It was dishonored upon presentation. The $17,500 note of Fair Oaks was then delivered to and accepted by Boswell. Under instructions from Fair Oaks the Reid note for $18,705.45 was retained by the Title Company. This note was not paid on or before December 21, 1954, or at any subsequent date.

On January 7, 1955, defendant Reid and his wife entered into a contract with George W. Reed for the construction of 38 dwellings upon the real property, at a price of $262,200, which contract was placed in escrow with Title Company, together with other documents. On February 8, 1955, Wells Fargo Bank wrote a letter to Charles Hicks of Fair Oaks Investment and Mortgage Company confirming that it would carry interim construction loans on 25 lots in Lincoln, California, for Bill Reid.

No houses were ever built on the lots; in fact construction thereon was not even begun and the project failed. On January 16, 1956, action was filed by Boswell against Hicks and Marko on the promissory note made by them. Judgment was recovered in the sum of $17,500, plus $2,000 attorney's fees. Execution was then levied by Boswell on the Reid note, and at a sale held thereon, Boswell purchased said note. When the complaint in the instant action was filed on October 22, 1958, Boswell was the owner and holder of said note. Findings of fact and conclusions of law were entered in favor of the plaintiff as to all of the allegations of the complaint, and against defendant on each and all of his denials and affirmative defenses presented in the answer. Judgment was thereupon entered for plaintiff in the sum of $18,705.45, and in the further sum of $2,500 for attorney's fees.

In attacking the findings of fact and conclusions of law, appellant contends that the Title Company, as escrow holder, was without authority to close the escrow, or to make delivery, either actually or constructively, of the check and promissory note deposited with it. Specifically, it is asserted that the conditions imposed by defendant in his instructions had not been complied with; i.e., that the check for $5,700 and the promissory note were not to be delivered until Fair Oaks had procured and made available not only the 38 FNMA rights, but also the certificates of real estate valuations required by the Veterans' Administration and interim and take-out financing; and that the obtaining of all of these items was a condition precedent to the closing of the escrow.

The trial court found, adversely to appellant's contentions, that the conditions of the escrow had been met and that the escrow was properly closed. In addition to its finding on the ultimate fact, the court found:

"That the documents furnished by BOSWELL showed that FNMA rights had been obtained and constituted a valid transfer of the requisite number of FNMA rights to 'FAIR OAKS' 'or nominee'; that REID and 'FAIR OAKS' were working together under contract; that transfer to 'FAIR OAKS' made the rights available for 'Bill Reid project,' *which was all that defendant* REID*'s instructions required*; that the FNMA rights were available for REID in escrow ten (10) days after REID filed his escrow instructions; that REID knew of their availability.

". . . . . . . . . . . .

"*That the conditions of the escrow having been met,* con-

structive delivery of the REID note in the sum of $18,705.45 took place and title to the note passed to the payee, FAIR OAKS INVESTMENT AND MORTGAGE COMPANY, or order." (Emphasis added.)

It is fundamental that evidence must be viewed on appeal in the light most favorable to respondent, and that all reasonable inferences should be indulged in favor of the findings and judgment. (*Primm* v. *Primm,* 46 Cal.2d 690 [299 P.2d 231]; *Grainger* v. *Antoyan,* 48 Cal.2d 805 [313 P.2d 848]; *Crawford* v. *Southern Pacific Co.,* 3 Cal.2d 427 [45 P.2d 183].) If the findings are supported by substantial evidence, contradictions in the testimony will be disregarded. (*Estate of Jamison,* 41 Cal.2d 1 [256 P.2d 984]; *Owens* v. *White Memorial Hospital,* 138 Cal.App.2d 634 [292 P.2d 288]; *Garrick* v. *J.M.P., Inc.,* 150 Cal.App.2d 232 [309 P.2d 896].)

■ In the instant case, the trial court found both ultimate and probative facts. Although the finding of the ultimate fact of necessity includes a finding of all evidentiary facts required to sustain it, the inclusion of such probative facts will not vitiate findings otherwise sufficient. (*Fitzpatrick* v. *Underwood,* 17 Cal.2d 722 [112 P.2d 3]; *Estate of Moore,* 143 Cal.App.2d 64 [300 P.2d 110]; *Banner Metals, Inc.* v. *Lockwood,* 178 Cal.App.2d 643 [3 Cal.Rptr. 421].) If the ultimate facts are necessary inferences therefrom, the probative findings will be upheld. (*Jessen* v. *Peterson, Nelson & Co.,* 18 Cal.App. 349 [123 P. 219]; *McCray* v. *Burr,* 125 Cal. 636 [58 P. 203]; *Breyfogle* v. *Tighe,* 58 Cal.App. 301 [208 P. 1008]; *Bissell* v. *King,* 91 Cal.App. 420 [267 P. 356].)

■ Furthermore, "It is always presumed on appeal that the trial court gave effect to the evidence which logically tended to establish the ultimate facts found." (*Rose* v. *Knapp,* 153 Cal.App.2d 379, 381 [314 P.2d 812].)

We are of the opinion that the findings of the court now being considered were supported by substantial evidence. The escrow instructions of appellant Reid authorized the transfer of the $5,700 check and promissory note conditioned, first, upon receipt of evidence that the FNMA rights had been obtained and were available for use on the construction project. The findings of the court that these rights had been obtained and were available were clearly supported by the evidence. The second condition of defendant Reid's instructions was that the escrow holder receive for his account "Agreement from Marko to obtain C.R.V.'s—interim financing, take out financing, and process all closing (insurance

excepted) and . . . inspection at his expense." This condition called for an agreement or promise to perform, rather than performance itself. The court found that such an agreement in the form of matching escrow instructions had been filed with the Title Company by Fair Oaks. This finding was also supported by substantial evidence.

The claim of error in the rulings of the trial court admitting, over the objection of defendant, documentary evidence of the transaction between Fair Oaks and Boswell, relating to the acquisition of the FNMA rights, cannot be sustained. ▆ These documents, to which objection was made as "hearsay" and not binding upon defendant, were pertinent to the issue of whether or not compliance had been had with the terms and conditions of the escrow. This was the precise fact in dispute and evidence thereon, including acts and declarations forming part of the transaction, was clearly admissible. (Code Civ. Proc., § 1870, subds. 1, 7, and § 1850.) Such documents, of course, would be hearsay under the technical rule, but are nevertheless admissible as part of the transaction, or res gestae, as types of "verbal acts." (*Schaad* v. *Barceloux,* 42 Cal.App. 337 [183 P. 716] ; *Orella* v. *Johnson,* 38 Cal.2d 693 [242 P.2d 5] ; *Sethman* v. *Bulkley,* 9 Cal.2d 21 [68 P.2d 961].) The record shows these matters were all part of the same escrow. ▆ As such, notice given to the escrow holder would be imputed to each of the parties to the escrow. (*Early* v. *Owens,* 109 Cal.App. 489 [293 P. 136] ; *Smith* v. *Brown,* 1 Cal.App.2d 492 [36 P.2d 1081] ; 18 Cal. Jur.2d, Escrows, § 16, p. 328.) In the instant case there was additional evidence supporting the finding of the court that Reid's authorized agent, Kane, had notice and knowledge of the documents and had been apprised of the availability of the FNMA rights.

The affirmative defense that the consideration for the note had failed, as raised in the trial court and presented on this appeal, poses a more formidable question. ▆▆ Plaintiff, as the purchaser of the promissory note at an execution sale was concededly not a holder in due course (Civ. Code, § 3133). He acquired only the title of, and subject to such personal defenses as could have been asserted against the payee, Fair Oaks. (Civ. Code, § 3139 ; *Benson* v. *Andrews,* 138 Cal.App.2d 123 [292 P.2d 389] ; *Poe* v. *Francis,* 132 Cal.App. 330 [22 P.2d 801].) ▆ "Absence or failure of consideration is matter of defense as against any person not a holder in due course; . . ." (Civ. Code, § 3109.) Such defense rests upon

some fact or contingency which occurred between the time of the making of the contract and the action thereon, resulting in the material failure of performance by one party. (*Benson* v. *Andrews, supra*; *Nicholl* v. *Ipsen,* 130 Cal.App.2d 452 [278 P.2d 927].) "Failure of consideration is the failure to execute a promise, the performance of which has been exchanged for performance by the other party." (*Bliss* v. *California Cooperative Producers,* 30 Cal.2d 240, 248 [181 P.2d 369, 170 A.L.R. 1009].)

Appellant claims that the 38 FNMA rights were never available for the project and that Fair Oaks failed to provide Reid with them, as well as the agreement to obtain C.R.V.'s, interim financing, take-out financing and to process all closings or handle inspections at their expense. Hence, it is asserted there was a complete failure of consideration.

 The burden of proving failure of consideration as a matter of defense is upon the party who asserts it, since every negotiable instrument is deemed at least prima facie to have been issued for a valuable consideration. (Civ. Code, §§ 3105, 3106, 3109; *Williams* v. *Reed,* 48 Cal.2d 57 [307 P.2d 353]; *De Castro & Co.* v. *Liberty Steamship of Panama,* 186 Cal. App.2d 628 [9 Cal.Rptr. 107]; *Benson* v. *Andrews,* 138 Cal. App.2d 123 [292 P.2d 389].)

The trial court found as an ultimate fact that defendant had failed to establish "failure of consideration" as an affirmative defense. In a written opinion it noted that performance by Fair Oaks of its agreement to obtain construction financing, interim and take-out loans, was not a condition precedent to the issuance of the note. We quote from the opinion as follows:

"FNMA rights here were available within ten days after Reid filed his escrow instructions. Why were they not used to obtain construction financing? It appears in evidence that the contract with the Contractor, George Reed, who was to build the homes and who had agreed to put up capital, was not entered into until January 7, 1956. At this time, the FNMA rights only had two months to run, probably too late to use these rights. Who was responsible for the delays? There is no evidence on this in the record. On December 21, 1954, Reid was in default in his note to Fair Oaks. Did Fair Oaks default in their performance of their agreement? Kane asserted they did . . . but there is no evidence whatever to substantiate this. There is a letter in evidence from Wells Fargo Bank,

dated February 8, 1955 . . . committing the bank to make interim loans on houses on 25 lots.

" . . . . . . . . . . . . .

"Since the note, by its terms, was made payable on a date prior to the time when any of these acts could possibly have been accomplished, accomplishment of these acts could not possibly have been intended as a condition precedent. Furthermore, payment of the note was to be the source of funds from which Boswell would be paid for his FNMA rights, the vital factor in the accomplishment of the project.

" . . . . . . . . . . . . .

"Defendant did not sustain the burden of proving a default by Fair Oaks. True, the acts were not accomplished but this does not necessarily imply default. For all that appears, Fair Oaks was prevented from performance and the project was stymied due (1) to the failure of Reid to come up with necessary preliminary expense financing, including failure to pay for the FNMA rights by defaulting under his promissory note, or possibly performance was prevented by (2) delays by Reid in completing his contract with his builder. Whatever the cause, there is no proof, certainly no preponderance of evidence, to entitle the Court to sustain a defense of default of performance by Fair Oaks. Before the Court could reach the conclusion that Fair Oaks was in default, proof would first have to be made that Fair Oaks was given the opportunity to act and omitted to do so. This was not done. The only evidence is to the contrary."

The foregoing analysis by the trial court, and its interpretation of the factual background of the controversy as disclosed by its findings and conclusions, find support in the record. The inferences drawn from the record appear to us to be logical and legitimate. Certainly, the court was not bound to conclude that failure of consideration of the promissory note should be equated with failure of the construction project. Nor was it under compulsion to accept the version of appellant and of his agent, Kane, that Fair Oaks was responsible for the failure because of its alleged default in obtaining preliminary and interim financing for construction. We reiterate, the resolution of conflicts in the evidence is peculiarly for the trial court. If more than one inference reasonably can be deduced from the facts, its decision thereon will not be disturbed on appeal. (*Crawford* v. *Southern Pacific Co.*, 3 Cal.2d 427 [45 P.2d 183]; *Standard Realty & Dev. Co.* v. *Ferrera*, 151 Cal.App.2d 514 [311 P.2d 855].) Conceding that the

exact cause of the enterprise's frustration is not mirrored forth with any clarity in the record, nevertheless the onus therefor must be charged to appellant. The burden was upon him affirmatively to prove that consideration for the note had failed because of some default or failure of performance on the part of the payee. The court below, as we have seen, found that this burden had not been met, adopting the view that in sequence of performance the payment of $5,700 and the delivery of Reid's promissory note to Fair Oaks were initial necessary steps before further performance would be required by Fair Oaks. Default by appellant in honoring the $5,700 check at the outset could well have been the decisive factor which led to the ultimate defeat of the project. In any event, the refusal of the trial court to fix responsibility therefor on Fair Oaks should not be disturbed. This resolution of the litigation leads to no unjust result, since plaintiff had transferred for defendant's use rights which were valued, even at discount, in excess of $17,000, and which were never returned to plaintiff but expired because of nonuser.

The final contention of appellant that the judgment was excessive and if sustained, should be reduced, appears to be without merit.

The order denying the motion for new trial is nonappealable. (Code Civ. Proc., § 963; *Rodriquez* v. *Barnett,* 52 Cal.2d 154 [338 P.2d 907]; *Hamasaki* v. *Flotho,* 39 Cal.2d 602 [248 P.2d 910].)

The judgment is affirmed.

Peek, P. J., and Schottky, J., concurred.