Filed 7/8/14  Renteria v. Gutierrez CA5

NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIFTH APPELLATE DISTRICT

| | |
|---|---|
| RAYMOND RENTERIA et al., <br><br> Plaintiffs and Appellants, <br><br> v. <br><br> ANTONETTE GUTIERREZ, Individually and as Executrix, etc., <br><br> Defendant and Respondent. | F063845 <br><br> (Super. Ct. No. 07CECG03513) <br><br> **OPINION** |

-ooOoo-

APPEAL from a judgment of the Superior Court of Fresno County.  Alan M. Simpson, Judge.

Raymond Renteria, in pro. per., for Plaintiff and Appellant.

Alaina N. Ybarra for Plaintiff and Appellant Rita Renteria.

Baker, Manock & Jensen, Dirk B. Paloutzian and Amber M. Bridges for Defendant and Respondent.

-ooOoo-

### INTRODUCTION

Appellants Raymond Renteria (Raymond) and Rita Renteria (Rita) contend the trial court erred in granting respondent Antonette Gutierrez's motion for judgment

following presentation of their case to the court, sitting as trier of fact. More particularly, appellants maintain respondent's motion was procedurally defective. They also challenge the trial court's findings that appellants failed to present substantial evidence to establish ownership of certain real property and that the statute of frauds barred their claims. Further, appellants assert the trial court erred by ruling that testimony offered in support of their case was hearsay not subject to an exception.

We conclude respondent's motion, while titled a motion for nonsuit below, may be treated on appeal as a motion for judgment. Further, we conclude the trial court's findings are supported by substantial evidence. Lastly, we determine appellants have waived any argument concerning objections based upon hearsay.

## FACTUAL BACKGROUND

In 1988, Raymond became delinquent on a debt owed to Finance and Thrift Company (F&T). That loan was secured by his property located at 1264 North Pecan in Reedley (Pecan Property). In an effort to avoid foreclosure, Raymond filed for bankruptcy. When that tact proved unsuccessful, Raymond executed a quitclaim deed whereby his mother, Rita, became one-half owner of the Pecan Property. He also executed a quitclaim deed giving his sister, Alice Rodriguez, a 25 percent share or interest. Rita then filed for bankruptcy.

Meanwhile, F&T conducted a trustee sale of the Pecan Property. Eventually, as a part of the bankruptcy proceeding involving Rita, a stipulation in settlement of all issues was reached. Included was the agreement that Rita would pay off the debt owed to F&T in exchange for a quitclaim deed in favor of Rita. Raymond agreed to be bound by the terms of the settlement and stipulation agreement reached in Rita's bankruptcy proceeding.

The money used to pay off the approximately $26,000 owed to F&T was obtained by another loan. Raymond's sister, Erlinda Gutierrez (Erlinda), and her husband Leroy Gutierrez (Leroy) agreed to loan Raymond and Rita the money. Erlinda and Leroy

2.

borrowed against their own property; from those funds, F&T was paid in full. In turn, F&T issued a quitclaim deed in favor of Rita as owner of the Pecan Property.

Thereafter, Rita executed a grant deed to the Pecan Property to Erlinda and Leroy. According to Raymond, this was done to secure Erlinda and Leroy's "credit" and was to be collateral for the loan. Once Rita and Raymond paid off the debt they then owed to Erlinda and Leroy, it was Raymond's understanding the Pecan Property would be returned to him and his mother.

Raymond and Rita began making payments to Erlinda and Leroy in March 1989. The payments were made in cash or money order payable to Erlinda. A record of the payments was maintained by Raymond in a "payment book" obtained at Chicago Title. Erlinda would make notations or initial the book to record the payments.

In about 1996,[1] Erlinda came into some money and paid off the loan she had taken against her own property to the benefit of Raymond and Rita. Thereafter, Raymond and Rita made payments according to an amortization schedule provided by Erlinda and continued to do so through 2001.[2] In 1996, the balance owed was $19,289.27. Monthly payments were $397.63. All payments were made and the debt to Erlinda was completed or paid off according to the schedule.

Instead of asking Erlinda to execute a grant deed on the Pecan Property in favor of him and Rita, Raymond asked Erlinda to hold the property in trust because he was ill at that time.

In 2004, Rita was diagnosed with dementia. Erlinda handled her mother's financial affairs thereafter as a result. At about this time, Raymond asked Erlinda about getting the house back but then told her that because he was not feeling well, they should wait a year before taking any action.

---

[1]Leroy passed away in February 1995.

[2]Earlier, Raymond testified payments were made from 1989 through 1994.

3.

Then, in 2005, Erlinda was diagnosed with lung cancer. Before she died in October of that year, Raymond testified Erlinda told him the Pecan Property would be returned to him. Specifically, Erlinda told him he and Rita would be "protected" and "safe."

Raymond learned after Erlinda's passing that the Pecan Property was left to respondent Antonette Garza (Antonette),[3] and he was given a life estate. He was angry because his mother did not receive a life estate in the Pecan Property and thus was not "protected" in the event of his death.

Raymond asked Antonette to return the Pecan Property to him and Rita, yet she refused. Antonette did not tell him the loan to her mother had not been repaid. Raymond and Rita submitted claims to the Pecan Property in probate court. Those claims were rejected. This lawsuit followed.

With regard to the evidence concerning the assertion that Raymond and Rita paid off the debt owed to Erlinda, Raymond testified the payment book was taken by Antonette after Erlinda's death, and thus was not available to him. He claimed the payment book would have been in his or his mother's papers and those documents were taken by Antonette after Erlinda's passing. Further, Raymond claimed Antonette was aware of the fact he and Rita had made payments to Erlinda, and Antonette had knowledge of the payment book. Additionally, Raymond testified Antonette was present when Erlinda made statements indicating the loan had been paid, and she was also present when Erlinda said the Pecan Property would be returned to Rita and Raymond.

Other family members, including Raymond's brother, Frank Renteria, and his sister, Alice Rodriguez, testified they had witnessed Raymond and Rita making a payment or payments to Erlinda. They also testified Erlinda had made statements that the loan to Rita and Raymond had been satisfied. In particular, Frank Renteria testified

---

[3]At trial, respondent testified she had divorced and was using her maiden name, Antonette Gutierrez. Judgment was entered for respondent under that name.

4.

Antonette stated the loan had been "paid already" and the Pecan Property would be returned to the "family." Frank Renteria believed Erlinda intended to return the Pecan Property to all of Rita's children. Alice Rodriguez had the same understanding.

Antonette maintained that prior to her mother's death in October 2005, Erlinda advised Antonette that the loan made to Rita and Raymond was not repaid.

In 2004, Erlinda told Antonette that she intended to leave the Pecan Property to Antonette and her sister Melissa Gutierrez.[4] After Erlinda was diagnosed with cancer, she reminded Antonette the Pecan Property belonged to her (Erlinda) because Raymond and Rita had not repaid the loan.

Antonette first learned of the particulars of Erlinda's will and trust after her mother's passing. She denied any knowledge of a payment book. It was not among her mother's belongings. She did not remove any items from the Pecan Property belonging to her grandmother Rita or her Uncle Raymond following her mother's death.[5]

## DISCUSSION

**Preliminary Matters**

### The representation of Rita Renteria

On October 23, 2013, attorney Alaina N. Ybarra substituted in as counsel on appeal for Rita. This substitution was necessitated by the fact Raymond could not represent the interests of his mother Rita, over whom he had guardianship.

On November 5, 2013, this court granted Ms. Ybarra a 30-day extension of time within which to file an opening brief on behalf of Rita, or to advise the court and parties in writing that she adopted the brief previously filed by Raymond.

Thereafter, Raymond timely filed his reply brief.

---

[4]Melissa Gutierrez died on May 19, 2005.

[5]Antonette was accompanied by members of the Reedley Police Department on the occasion she removed her mother's belongings from the Pecan Property where Rita and Raymond continued to reside.

On December 4, 2013, counsel for Rita filed a document entitled "Notice of Adoption of Appellants' Reply Brief," expressly stating Rita "adopts the argument and authorities set forth in the *Reply Brief* of Appellant Raymond Renteria." (Italics added.)

Counsel for Rita failed to respond to this court's order concerning whether her client elected to adopt the *opening brief* filed by Raymond. Nevertheless, in light of the fact a separate opening brief was not filed as permitted by the court's November 5 order, and the fact Rita did elect to adopt appellant Raymond's reply brief, we will treat the notice filed in December 2013 as an election by Rita to adopt *both* the opening brief and the reply brief filed by Raymond.

**The request for judicial notice**

On June 18, 2012, Raymond filed a "Request for Judicial Notice in Support of Ex Parte Application to Augment Record and Order Thereon." Specifically, Raymond asked the court to take judicial notice of the following: (1) court proceedings held before the United States Bankruptcy Court on November 14, 1988; (2) a deposition of Raymond taken May 9, 2011; (3) a deposition of Antonette taken August 23, 2011; and (4) a deposition of Henry D. Nunez taken August 29, 2011.

Rule 8.809(a) of the California Rules of Court provides:

> "(1) To obtain judicial notice by a reviewing court under Evidence Code section 459, a party must serve and file a separate motion with a proposed order.

> "(2) The motion must state:

> "(A) Why the matter to be noticed is relevant to the appeal;

> "(B) Whether the matter to be noticed was presented to the trial court, and, if so, whether judicial notice was taken by that court;

> "(C) If judicial notice of the matter was not taken by the trial court, why the matter is subject to judicial notice under Evidence Code section 451, 452, or 453; and

> "(D) Whether the matter to be noticed relates to proceedings occurring after the order or judgment that is the subject of the appeal."

Raymond's motion fails to address why the materials appended to his notice are relevant, whether the materials were considered by the trial court, as well as whether those materials relate to proceedings occurring after the order or judgment at issue. Because Raymond has failed to comply with the requirements of California Rules of Court, rule 8.809, we deny his request. In any event, the transcript for the proceedings heard in the United States Bankruptcy Court for the Eastern District of California on November 14, 1988, in the matter entitled *Bankruptcy Hearing in the Matter of: Rita Renteria* were made a part of the record on appeal by virtue of Raymond's motion to augment the record filed May 22, 2013, and granted June 11, 2013.

Even overlooking the foregoing procedural defect, the balance of appellants' request is denied as those materials are not necessary for resolution of this appeal.

**A note re respondent's brief**

At page 13 of her opening brief, respondent puts forth an argument that appellants failed to present evidence sufficient to prove their claims concerning conversion of monies distributed by Catholic Charities. However, appellants did not argue in their opening brief on appeal that the trial court erred with regard to its findings concerning the conversion cause of action.

While appellants' opening brief references the purported conversion at pages 12 and 13 under the heading of "Factual Background," the arguments actually presented by appellants amount to only an attack on the trial court's findings with regard to the Pecan Property. For that reason, this court will not address the issue of conversion or respondent's arguments related thereto.

## I. Respondent's Motion at the Close of Appellants' Case-in-Chief

Appellants argue respondent's motion at the close of their case-in-chief was procedurally improper in light of this court's previous decision in *Lingenfelter v. County of Fresno* (2007) 154 Cal.App.4th 198. They contend the trial court committed reversible error by granting the motion. Respondent maintains the motion presented in the trial court as a motion for nonsuit must be treated on appeal as a motion for judgment.

In *Lingenfelter*, this court concluded a motion for nonsuit is no longer recognized in a court or bench trial after the close of the plaintiff's evidence.  Rather, the correct motion is one for judgment pursuant to Code of Civil Procedure section 631.8.  Further, a motion for nonsuit may be treated as a motion for judgment for the defendant under that statute.  (*Lingenfelter v. County of Fresno*, *supra*, 154 Cal.App.4th at p. 206; see also *Combs v. Skyriver Communications*, *Inc*. (2008) 159 Cal.App.4th 1242, 1262; *Lucchesi v. Giannini & Uniack* (1984) 158 Cal.App.3d 777, 784, fn. 7, overruled on a different ground in *Wilson v. Parker*, *Covert & Chidester* (2002) 28 Cal.4th 811, 824.)  Therefore, in this case, we treat the trial court's order granting respondent's motion for nonsuit as one for judgment.  (See *Jazayeri v. Mao* (2009) 174 Cal.App.4th 301, 314, fn. 23.)[6]

Code of Civil Procedure section 631.8, subdivision (a) provides, in relevant part:

> "After a party has completed his presentation of evidence in a trial by the court, the other party, without waiving his right to offer evidence in support of his defense or in rebuttal in the event the motion is not granted, may move for a judgment.  The court as trier of the facts shall weigh the evidence and may render a judgment in favor of the moving party, in which case the court shall make a statement of decision as provided in Sections 632 and 634, or may decline to render any judgment until the close of all the evidence."

In a motion for judgment, the trial court "must decide questions of credibility, must weigh the evidence, and must make findings of fact.  [Citations.]"  (*Lingenfelter v. County of Fresno*, *supra*, 154 Cal.App.4th at p. 204; see *Ford v. Miller Meat Co*. (1994) 28 Cal.App.4th 1196, 1200; *Jordan v. City of Santa Barbara* (1996) 46 Cal.App.4th 1245, 1255; Wegner et al., Cal. Practice Guide:  Civil Trials and Evidence (The Rutter Group 2013) ¶ 12.206, at p. 12-43 (rev. #1, 2009).)  In reviewing an order granting such a

<hr />

[6] "'"The purpose of Code of Civil Procedure section 631.8 is to enable a trial court which, after weighing the evidence at the close of the plaintiff's case, is persuaded that the plaintiff has failed to sustain his burden of proof, to dispense with the need for the defendant to produce evidence.  [Citations.]"  [Citation.]  Thus, section 631.8 serves the same purpose as does section 581c, which permits the court to grant a nonsuit in a jury trial.  [Citation.]'"  (*Roth v. Parker* (1997) 57 Cal.App.4th 542, 549.)

motion, we are bound by the trial court's findings that are supported by substantial evidence, but not by its interpretation of the law. (*Fink v. Shemtov* (2012) 210 Cal.App.4th 599, 608; *People ex rel. Dept. of Motor Vehicles v. Cars 4 Causes* (2006) 139 Cal.App.4th 1006, 1012.)

## II.     Substantial Evidence Supports the Trial Court's Findings

Appellants assert there was substantial evidence to support their position in the trial court. Stated another way, appellants contend the evidence did not support the trial court's ruling in favor of respondent. Respondent maintains the trial court properly granted her motion for judgment because the motion was supported by substantial evidence.

The question on appeal is whether the trial court's findings following respondent's motion for judgment are supported by substantial evidence. We find they are.

### A.     Standards of Review

When factual findings are challenged on the ground there is no substantial evidence to support them, an appellate court must determine whether there is any substantial evidence to sustain the challenged findings. (*Leff v. Gunter* (1983) 33 Cal.3d 508, 518.) The clear and convincing evidence standard applicable in the trial court does not govern our review. (*Crail v. Blakely* (1973) 8 Cal.3d 744, 750.)

Substantial evidence is evidence "'of ponderable legal significance, … reasonable in nature, credible, and of solid value.'" (*Bowers v. Bernards* (1984) 150 Cal.App.3d 870, 873, italics omitted; see *Grappo v. Coventry Financial Corp.* (1991) 235 Cal.App.3d 496, 507.) If substantial evidence exists, it is of no consequence that the evidence could also support a contrary conclusion. (*Bowers v. Bernards*, *supra*, at pp. 873–874.) Appellants bear the burden of demonstrating there is no substantial evidence to support the challenged factual findings. (*Foreman & Clark Corp. v. Fallon* (1971) 3 Cal.3d 875, 881.)

We begin with a presumption that the record contains evidence to sustain every finding of fact (*Foreman & Clark Corp. v. Fallon*, *supra*, 3 Cal.3d at p. 881), and we

9.

view the evidence in the light most favorable to the prevailing party, giving the prevailing party the benefit of every reasonable inference and resolving all conflicts in the evidence in support of the judgment (*As You Sow v. Conbraco Industries* (2005) 135 Cal.App.4th 431, 454). We do not weigh the evidence, consider the credibility of the witnesses, or resolve conflicts in the evidence or in the reasonable inferences that may be drawn from them. (*Leff v. Gunter*, *supra*, 33 Cal.3d at p. 518.) If more than one inference reasonably can be deduced from the facts, the trial court's decision will not be disturbed on appeal. (*Boswell v. Reid* (1962) 199 Cal.App.2d 705, 714.)

**B.     The Statement of Decision**

The trial court filed its statement of decision on November 17, 2011. In pertinent part, it provides as follows:

> "Oral and documentary evidence was introduced on behalf of the respective parties and the cause was argued and submitted for decision. The court, having considered the evidence and heard the arguments of counsel and being fully advised, issues the following statement of decision setting forth the factual and legal basis for its decision:
>
> "1. With regard to the issue of whether the Pecan Property belongs to [appellants], the court's decision is that [appellants] have not presented evidence sufficient to establish that [appellants] own or are entitled to the Pecan Property.
>
> "[Appellants] alleged that they are the rightful owners of the Pecan Property because in or about 1989 they allegedly entered into an oral agreement with [respondent]'s parents. [Appellants] alleged that under the terms of this purported agreement, they transferred title to the Pecan Property to [respondent]'s parents in consideration for a loan, i.e., the repayment of the indebtedness owed by [Raymond] and secured by the Pecan Property. [Appellants] further alleged that [respondent]'s parents agreed to transfer title of the Pecan Property to [appellants] upon repayment of the loan. [Appellants] contended that they repaid [respondent]'s parents in 2002, but instead of taking back title, they left title with Erlinda to hold for them 'in trust.' These allegations formed the basis for [appellants]' causes of action for fraud and deceit, aiding and abetting fraud and deceit, breach of fiduciary duty, breach of contract, and specific performance.
>
> "Under California's statute of frauds, an agreement to transfer land to another is unenforceable unless it is reduced to writing. (Civ. Code,

10.

§ 1624 (a)(3).) California law prohibits the transfer of an interest in real property without a written instrument subscribed by the party creating the interest. (Code Civ. Proc., § 1971.)[7] Additionally, a voluntary express trust with respect to real property can only be created in California by a written instrument subscribed by the trustor or trustee. (Prob. Code, § 15206;[8] Code Civ. Proc., § 1971; see *Doran v. Doran* (1893) 99 Cal. 311, 314; *Smith v. Mason* (1898) 122 Cal. 426, 427; 48 Cal.Jur.2d, Trusts, § 31.) [Appellants] have neither presented evidence sufficient to meet these legal standards nor explained why they are excused from such requirements.

"Regardless of the foregoing, the court heard the testimony of witnesses and was presented with documentary evidence purporting to establish [appellants]' repayment of [respondent]'s parents and right to title of the Pecan Property. The court did not find the testimony regarding repayment of [respondent]'s parents to be credible. In particular, [Raymond]'s testimony on a variety of subjects was inconsistent and, in some cases, not believable. He was, therefore, not a credible witness and his testimony was discounted. Additionally, [appellants] presented the testimony of other witnesses, including Frank Renteria, Alice Rodriguez, Danny Ruelas and Aremi Alanis, each of whom testified to the effect that Erlinda made statements that [Rita] had paid off the purported loan. Oral declarations of a party whose lips are sealed by death, such as those upon which [appellants] relied so heavily, is evidence of the weakest kind and should be received with caution. (*In re Armstrong's Estate* (1966) 241 Cal.App.2d 1, 10; *In re Zlaket's Estate* (1960) 180 Cal.App.2d 553, 560.) Moreover, Frank Renteria and Alice Rodriguez also claimed an ownership interest in the Pecan Property as children of Rita …, which affected their credibility. Mr. Alanis' credibility was adversely affected by his demeanor on the witness stand and by his acknowledgment that he had filed his own

---

[7]Code of Civil Procedure section 1971 provides as follows: "No estate or interest in real property, other than for leases for a term not exceeding one year, nor any power over or concerning it, or in any manner relating thereto, can be created, granted, assigned, surrendered, or declared, otherwise than by operation of law, or a conveyance or other instrument in writing, subscribed by the party creating, granting, assigning, surrendering, or declaring the same, or by the party's lawful agent thereunto authorized by writing."

[8]Probate Code section 15206 states as follows:

"A trust in relation to real property is not valid unless evidenced by one of the following methods: [¶] (a) By a written instrument signed by the trustee, or by the trustee's agent if authorized in writing to do so. [¶] (b) By a written instrument conveying the trust property signed by the settlor, or by the settlor's agent if authorized in writing to do so. [¶] (c) By operation of law."

11.

unsuccessful lawsuit against [respondent] relating to the estate of Erlinda. The court, therefore, discounted the testimony of [appellants]' witnesses.

"[Appellants] failed to present sufficient evidence to preponderate that the purported loan had been repaid. Except for [Raymond], whose credibility was suspect, no witness was aware of how much money was exchanged in total between [appellants] and Erlinda or what it was for.

"Likewise, the testimony of [Raymond] and others concerning Erlinda's purported statements near the end of her life about her estate plan in general, and disposition of the Pecan Property specifically, was vague and quizzical. The court did not find testimony of statements such as, 'You [Raymond] and your mother [Rita] own the trust' to be probative. Likewise, the testimony regarding Erlinda's changes to her estate plan in the last couple months of her life, and her statements to others about that, was contradictory. Erlinda may have very well changed her mind over time as to how she wished to bequeath the Pecan Property.

"Furthermore, none of the documents that were received into evidence were signed by [respondent]'s parents, or set forth the specific terms of any alleged agreement. The documents presented were authenticated by witnesses determined by the court to lack credibility and were accordingly given minimal weight.

"Accordingly, [appellants] were unable to establish a right to title to the Pecan Property."

## C.    Analysis

### *Ownership of the Pecan Property*

The trial court found that despite appellants' assertions to the contrary, they had not established ownership to the Pecan Property for several reasons. We address each in turn.

### a.    Equitable Mortgage

Appellants contend the trial court erred by failing to specifically address their argument that the transaction between Leroy and Erlinda and Raymond and Rita created an equitable mortgage.[9]

---

[9]Associated with this argument is appellants' assertion via footnote in the opening brief that the trial court should have permitted them "to amend their complaint to plead a cause of action based on wrongful foreclosure based on an equitable mortgages theory." Generally,

The trial court considered appellants' argument after giving its tentative decision in favor of granting respondent's motion for judgment. Its statement of decision does not specifically address appellants' argument in that regard. Nonetheless, the record reflects appellants did not challenge this omission. In light of the fact appellants did not challenge the omission of this particular finding in the statement of decision, we will "infer the trial court made implied factual findings favorable to the prevailing party on all issues necessary to support the judgment, including the omitted or ambiguously resolved issues." (*Fladeboe v. American Isuzu Motors Inc.* (2007) 150 Cal.App.4th 42, 59-60.)

Here, too, the trial court's statement of decision provides a narrative explanation of the factual and legal bases for its decision. The trial court was not required "to make minute findings as to individual items of evidence." (*People v. Casa Blanca Convalescent Homes, Inc.* (1984) 159 Cal.App.3d 509, 524, abrogated on other grounds in *Cel-Tech Communications, Inc. v. Los Angeles Cellular Telephone Co.* (1999) 20 Cal.4th 163, 184-185; accord, *Golden Eagle Ins. Co. v. Foremost Ins. Co.* (1993) 20 Cal.App.4th 1372, 1379–1380 [statement of decision sufficient if it "fairly discloses the court's determination as to the ultimate facts and material issues in the case"].)

"A mortgage can be created, renewed or extended, only by writing, executed with the formalities required in the case of a grant of real property." (Civ. Code, § 2922.) A mortgage comes within the statute of frauds. (*Secrest v. Security National Mortgage Loan Trust 2002-2* (2008) 167 Cal.App.4th 544, 552.) Nonetheless, an equitable mortgage will be construed if the parties created a defective mortgage, intended to create a security interest in property, intended to make real property security for an obligation,

however, we need not address issues discussed only in a footnote. (Cal. Rules of Court, rule 8.204(a)(1)(B); *People v. Freeman* (1994) 8 Cal.4th 450, 482, fn. 2; see *Sabi v. Sterling* (2010) 183 Cal.App.4th 916, 947; *Evans v. Centerstone Development Co.* (2005) 134 Cal.App.4th 151, 160.) Thereafter, and somewhat confusingly, appellants contend in their reply brief that respondent raised the point yet claimed it "is a non-issue." Because appellants originally raised the issue in their opening brief via footnote, and because appellants themselves later characterized this issue to be a "non-issue," we consider it waived on appeal.

13.

or where it is necessary to prevent unjust enrichment. (*Grappo v. Coventry Financial Corp.*, *supra*, 235 Cal.App.3d at p. 509.)

Here, the only evidence that could be said to establish an equitable mortgage was discredited by the trier of fact. More particularly, the testimony of Raymond, his brother Frank Renteria, and his sister Alice Rodriguez was discounted by the trial court. The documentary evidence admitted, discussed more fully below, simply does not support appellants' argument that an equitable mortgage was created.

### b. Statute of Frauds

First, the trial court referenced the statute of frauds. Under the statute of frauds, contracts "for the sale of real property, or of an interest therein" (Civ. Code, § 1624, subd. (a)(3)) "are invalid, unless they, or some note or memorandum thereof, are in writing and subscribed to by the party to be charged or by the party's agent." (*Id.*, subd. (a); see *Alameda Belt Line v. City of Alameda* (2003) 113 Cal.App.4th 15, 20-21.) Here, there is no written contract or agreement concerning the loan by Erlinda and Leroy to the benefit of Raymond and Rita purportedly made in 1989.

"The statute of frauds primarily serves an evidentiary purpose. [Citation.] It requires reliable evidence of the existence and terms of the contract so as to prevent enforcement through fraud or perjury of a contract that was never in fact made. [Citation.]" (*Lee v. Lee* (2009) 175 Cal.App.4th 1553, 1556; see *Sterling v. Taylor* (2007) 40 Cal.4th 757.)

The statute of frauds does not require a written contract. A note or memorandum subscribed by the party to be charged is sufficient. (*Sterling v. Taylor*, *supra*, 40 Cal.4th at p. 765.) A memorandum will satisfy the statute of frauds if it identifies the subject of the parties' agreement, shows they made a contract, and states the essential contract terms with reasonable certainty. (*Id.* at p. 766.)

Appellants reference a handwritten note allegedly inscribed by Erlinda onto a document the parties agreed was a memorandum dated May 28, 1996—prepared for Erlinda by a Mark Macias and accompanied by an amortization chart—as substantial

14.

evidence of a transaction between Erlinda and Leroy and Rita and Raymond. The handwriting was identified as belonging to Erlinda and read as follows: "I paid, Grandma house off, so she owes me for the loan. You look at the month & year and that's what she owes me. House is not to be given back to any one, until she pays off loan. Everything is figured out until loan is paid off (over)."[10] But this memorandum does not state the essential contract terms with reasonable certainty, nor is it clear regarding the subject of the parties' agreement. Significantly, the Pecan Property is in no way identified in the memorandum.

Moreover, Erlinda did not sign or even place her name on the memorandum prepared by Macias. Thus, the supporting writing relied upon by appellants is not sufficient to overcome the statute of frauds. (*Marks v. Walter G. McCarty Corp.* (1949) 33 Cal.2d 814, 820 ["it is a universal requirement that the statute of frauds is not satisfied unless it is proved that the name relied upon as a signature was placed on the document or adopted by the party to be charged with the intention of authenticating the writing"].) As the trial court pointed out, "none of the documents that were received into evidence were signed by [respondent]'s parents, or set forth the specific terms of any alleged agreement."

Other than Raymond's testimony that all payments were made and the loan was paid off in its entirety, there is no corroborating evidence to support these claims. Frank Renteria testified to seeing his mother Rita make a "couple" of payments in 1999 then "several" in 2003 or 2004. Alice Rodriguez testified to even less. Daniel Ruelas testified he saw Rita make two payments to Erlinda. Aremi Alanis merely stated he was aware of a loan between Rita and Erlinda, but he did not testify regarding any particular payments made. Evidence that some payments were made is certainly not evidence that all payments were made. The trial court's findings in this regard are reasonable.

---

[10]Despite the notation "(over)" at the bottom of the page, no additional writing or information was admitted into evidence.

15.

Appellants contend that after they paid off the loan to Erlinda, rather than return the property to them via grant deed, Erlinda agreed to hold the Pecan Property in trust for their benefit. However, it is well established that the statute of frauds forbids the creation of an express trust in real property by verbal declaration of its owner. (*Briggs v. Nilson* (1964) 226 Cal.App.2d 342, 345; *Kingsley v. Carroll* (1951) 106 Cal.App.2d 358, 363.) There exists no written evidence of such a trust. The testimony given during appellants' case-in-chief established only a purported verbal declaration of such a trust. Hence, the trial court's finding that a trust was not created is supported by substantial evidence.

### c. Credibility Determinations

Next, the trial court determined that, notwithstanding the statute of frauds, neither appellants' documentary evidence nor the evidence offered in their case-in-chief supported a finding appellants were entitled to ownership of the Pecan Property. When considering a motion for judgment, "the trial court must decide questions of credibility, must weigh the evidence, and must make findings of fact." (*Lingenfelter v. County of Fresno*, *supra*, 154 Cal.App.4th at p. 204; see *Plaza Home Mortgage*, *Inc. v. North American Title Co.*, *Inc.* (2010) 184 Cal.App.4th 130, 135.)

More specifically, on the issue of whether Rita and Raymond repaid to Erlinda the loan made on their behalf, the trial court concluded Raymond's testimony was "inconsistent and, in some cases, not believable." As to the testimony proffered by Frank Renteria, Alice Rodriguez, Danny Ruelas and Aremi Alanis that Erlinda made statements prior to her death that the loan in question had been paid off, the trial court noted testimony of this sort is, and obviously was, received with caution. Further, the trial court noted that as the children of Rita, Frank Renteria and Alice Rodriguez claimed an ownership in the Pecan Property, and that claim affected their credibility. Finally, the trial court noted that Aremi Alanis's testimony was "adversely affected by his demeanor on the witness stand and by his acknowledgment that he had filed his own unsuccessful lawsuit against [respondent]" concerning Erlinda's estate. The trial court's conclusions are supported by the record.

16.

On the other hand, Antonette testified Erlinda advised her that neither Raymond nor Rita had repaid the loan. The testimony of a single witness, even if that witness is a party to the case, may constitute substantial evidence. (*Roth v. Parker*, *supra*, 57 Cal.App.4th at pp. 549-550; see *In re Marriage of Mix* (1975) 14 Cal.3d 604, 614.) Here, it is plain the trial court found respondent's testimony to be credible. (*Roth*, *supra*, at p. 550.) Furthermore, a trial court's credibility findings cannot be reversed on appeal unless that testimony is incredible on its face or inherently improbable. (E.g., *Artesia Dairy v. Agricultural Labor Relations Bd.* (2008) 168 Cal.App.4th 598, 604; *People v. Watts* (1999) 76 Cal.App.4th 1250, 1259.) Respondent's testimony in this regard was neither incredible on its face nor inherently improbable.

The trial court also found the testimony of Raymond and others regarding Erlinda's statements near the end of her life about her estate plan, including the Pecan Property, to be "vague and quizzical." Again, credibility determinations were required of the court in deciding respondent's motion for judgment. (*Lingenfelter v. County of Fresno*, *supra*, 154 Cal.App.4th at p. 204.) "Because the trial court evaluates the evidence as a trier of fact, it may refuse to believe some witnesses while crediting the testimony of others." (*Combs v. Skyriver Communications*, *Inc.*, *supra*, 159 Cal.App.4th at p. 1263, citing *Jordan v. City of Santa Barbara*, *supra*, 46 Cal.App.4th at p. 1255.) As an appellate court, we do not reweigh evidence nor do we make credibility determinations. The trial court's findings will not be overturned on appeal absent manifest error. (*Estate of Sharff* (1963) 219 Cal.App.2d 128, 133.) No such error is present here. It is clear the trial court credited respondent's testimony over the testimony proffered on behalf of appellants. It was entitled to do so.

To the degree appellants argue there was evidence to support their position, it is irrelevant. There is also evidence to support the trial court's findings in support of respondent's motion for judgment. (*Bowers v. Bernards*, *supra*, 150 Cal.App.3d at pp. 873-874.) The fact some evidence may also support a conflicting inference does not require reversal.

17.

### d.    Hearsay Objections

Appellants maintain "all the objections the lower court sustained that excluded evidence in which the Appellants attempted to introduce the terms of the agreement with Respondents should have been overruled."

Significantly, California Rules of Court, rule 8.204(a)(1)(C) requires each brief "[s]upport any reference to a matter in the record by a citation to the volume and page number of the record where the matter appears."  Appellants have failed to adhere to the mandatory requirements of this court rule.  Appellants' brief is utterly lacking in citations to the record concerning the trial court's asserted errors in ruling on respondent's objections.  A review of the record reveals there are dozens and dozens of objections by respondent during the course of the trial.  "'The appellate court is not required to search the record on its own seeking error.' [Citation.]  Thus, '[i]f a party fails to support an argument with the necessary citations to the record, … the argument [will be] deemed to have been waived.  [Citation.]' [Citations.]" (*Nwosu v. Uba* (2004) 122 Cal.App.4th 1229, 1246.)

Further, Raymond is not exempt from the requirements of rule 8.204 of the California Rules of Court.  A party representing himself "'is to be treated like any other party and is entitled to the same, but no greater consideration than other litigants and attorneys.'" (*Nwosu v. Uba*, *supra*, 122 Cal.App.4th at pp. 1246-1247.)

Appellants have failed to comply with appellate rules of procedure.  Their claims concerning the trial court's evidentiary rulings following respondent's objections based upon hearsay are not supported by citation to the reporter's transcript.  Thus, we find appellants have waived such challenges on appeal.

### e.    Statute of Limitations

At pages 20 and 21 of their opening brief, appellants argue their claims were not barred by the statute of limitations.  Respondent then argued to the contrary.  Thereafter, in their reply brief at pages 9 and 10, appellants contend this argument was "argued and disposed of below" and assert the statute of limitations "is not at issue in this appeal."

In light of the fact appellants expressly assert the statute of limitations is "not at issue," we elect not to address the argument on appeal.[11]

### f.    Spoliation of Evidence

For the first time in their reply brief, appellants assert reversal is warranted to resolve the issue of spoliation of evidence. Specifically, appellants refer to their contention at trial that respondent wrongfully obtained possession of a payment book that would conclusively establish they had paid off the debt owed to Erlinda.

We need not consider this argument however. Appellate courts have concluded issues first raised in a reply brief will not be considered, absent a showing of good cause for the delay. "Consistent with well-established authority, absent justification for failing to present an argument earlier, we will not consider an issue raised for the first time in a reply brief." (*Save the Sunset Strip Coalition v. City of West Hollywood* (2001) 87 Cal.App.4th 1172, 1181, fn. 3; see *American Drug Stores*, *Inc. v. Stroh* (1992) 10 Cal.App.4th 1446, 1453; *Neighbours v. Buzz Oates Enterprises* (1990) 217 Cal.App.3d 325, 335, fn. 8.) The California Supreme Court declined to consider an argument raised for the first time in a reply brief, stating: "Obvious reasons of fairness militate against consideration of an issue raised initially in the reply brief of an appellant." (*Varjabedian v. City of Madera* (1977) 20 Cal.3d 285, 295, fn. 11.) There being no good cause shown, and in the interests of fairness, we did not consider the argument.

### g.    Summary

The trial court drew reasonable inferences from the evidence before it regarding its various findings. And we will not substitute our judgment—even assuming for the sake of argument that judgment were different—for that of the trial court. (*Greening v. General Air-Conditioning Corp.* (1965) 233 Cal.App.2d 545, 551.) The trial court properly granted respondent's motion for judgment.

---

[11]Notably, too, it would appear from the record that the trial court was not persuaded by respondent's argument that appellants' claims were barred by the applicable statute of limitations.

## DISPOSITION

The judgment is affirmed.  Costs on appeal are awarded to respondent.

_____

                                          PEÑA, J.

WE CONCUR:

_____

LEVY, Acting P.J.

_____

KANE, J.